917 P.2d 754

**GME, INC., a California corporation, Plaintiff–Appellant,**

and

**George A. Mendenhall, Plaintiff,**

v.

**Scott K. CARTER, Jr., an individual; and John Does I through X, Defendants– Respondents.**

No. 21620.

Supreme Court of Idaho, Boise, February 1996 Term.

May 24, 1996.

Dykas & Korfanta, P.A., Boise, for appellant. Frank J. Dykas argued.

Beer & Cain, Boise, for respondents. Stephen L. Beer argued.

JOHNSON, Justice.

This is a misappropriation of trade secrets case. We conclude that the owner of the trade secrets was not entitled to recover its attorney fees as part of the "actual loss" caused by the misappropriation. Because the owner did not present the question to the trial court, we do not address whether the trial court should have awarded the owner's development costs as a "reasonable royalty."

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

GME, Inc. manufactures and markets hydrocutters, devices which cut potatoes into french fries by using a continuous flow of water to force the potatoes through a stationary array of cutting blades. Scott Carter was employed for approximately two and one-half years as an engineer in charge of research and development for GME. Prior to his departure, Carter took home and retained seventy-six blueprint drawings belonging to GME. Fifty-six of the blueprints were for the Mark V hydrocutter, GME's current model at the time Carter left GME's employment.

After leaving GME, Carter worked on design modifications to hydrocutters in his spare time. Using concepts contained in the GME blueprints, Carter and a draftsman working for him prepared seven design drawings for a hydrocutter blade holder. Carter also showed his drawings to another engineer to obtain the engineer's opinion and took the drawings to a machinist to have a model fabricated. Although Carter hoped to market his blade holder eventually, he did not pursue the project beyond the development stage.

GME learned of Carter's possession of the blueprints and instituted a claim and delivery action, eventually recovering all the blueprints. GME also sued Carter for damages, alleging, among other claims, breach of contract and misappropriation of trade secrets contained in the blueprints.

The trial court ruled that Carter had breached his contractual obligation to maintain the company's trade secrets and had misappropriated GME's trade secrets. The trial court awarded GME $10,000 in exemplary damages for breach of contract. On the misappropriation of trade secrets claim, the trial court enjoined Carter from using the misappropriated trade secrets and from designing food-processing hydrocutters and parts for five years. Applying the standards for compensatory damages contained in the Idaho Trade Secrets Act (the trade secrets act), I.C. § 48–803(1) (Supp.1995), the trial court concluded that GME did not suffer any "actual loss," and that Carter was not "unjustly enriched" because he did not profit from the misappropriation. Under the trade secrets act, the trial court awarded GME $1.00 in compensatory damages, but no exemplary damages. The trial court also awarded GME $15,000 in attorney fees pursuant to I.C. § 12–120(3) (1990) (amended 1994).

GME appealed the damage award under the trade secrets act.

## II.

## GME DID NOT PRESERVE THE ISSUE OF USING DEVELOPMENT COSTS AS A MEANS OF MEASURING A "REASONABLE ROYALTY."

GME asserts that the trial court should have awarded it an amount equal to its development costs as a "reasonable royalty" under I.C. § 48–803(1). We decline the invitation to address this issue because GME did not preserve the issue in the trial court.

Idaho Code § 48–803(1) provides the standards for damages for violations of the trade secrets act:

> Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the *actual loss* caused by misappropriation and the *unjust enrichment* caused by misappropriation that is not taken into account in

computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a *reasonable royalty* for a misappropriator's unauthorized disclosure or use of a trade secret.

(Emphasis added).

GME asked the trial court to award its development costs for the Mark V hydrocutter, estimated at $100,000 to $150,000, as the measure of Carter's unjust enrichment, not as a reasonable royalty. The trial court concluded that the cases awarding development costs apply only when the wrongdoer has gained some advantage that it has exploited or will be able to do so in the future. Because the trial court concluded that Carter had not yet exploited his misappropriation or been unjustly enriched and that the five-year injunction would prevent him from doing so in the future, it declined to award GME its development costs.

GME never asked the trial court to consider the reasonable royalty rationale or caselaw as the basis for awarding development costs. Therefore, we will not address the issue for the first time on appeal. *Nollenberger v. Nollenberger,* 122 Idaho 186, 190, 832 P.2d 757, 761 (1992).

## III.

## THE TRIAL COURT WAS CORRECT IN NOT AWARDING ATTORNEY FEES AS "ACTUAL LOSS" UNDER THE TRADE SECRETS ACT.

GME asserts that the trial court should have awarded the attorney fees it has incurred pursuing its claim against Carter for misappropriation of trade secrets as the measure of its actual loss. We disagree.

In the context of the trade secrets act, we construe "actual loss" to mean lost profits, lost customers, lost market share, and similar losses. In light of our adherence to the "American rule" concerning the award of attorney fees, it would be an anomaly for us to allow attorney fees to be recovered in a case like this as part of damages. *But see Koelker v. Turnbull,* 127 Idaho 262, 266, 899 P.2d

972, 976 (1995) (upholding the inclusion of attorney fees for quieting title in a damage award for breach of covenant of title). Also, as the trial court pointed out, when the legislature enacted the trade secrets act, it copied much of the Uniform Trade Secret Act, but did not include the portion of the uniform act which provides for an award of attorney fees. In any event, the trial court awarded GME $15,000 in attorney fees pursuant to I.C. § 12–120(3). What GME seeks is to convert the remainder of its attorney fees into a damage award. This is not a proper part of "actual loss" under the trade secrets act.

### IV.

### CONCLUSION

We affirm the judgment of the trial court.

We award Carter costs, but not attorney fees, on appeal.

McDEVITT, C.J., and TROUT and SILAK, JJ., concur.

SCHROEDER, Justice, specially concurring.

The only additional factor that should be noted is that the trade secrets will not lose trade secret status at the expiration of the injunction if they would otherwise remain trade secrets. Trade secret status is not dependent upon the term of the injunction. This was agreed to by the appellant at oral argument.